UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CV 07-3319 SVW (JTLx) |
| Plaintiff, | ) | |
| v. | ) | ORDER GRANTING CLAIMANTS' |
| | ) | MOTION FOR JUDGMENT ON THE |
| 3,481 FIREARMS AND ASSORTED | ) | PLEADINGS WITH LEAVE TO AMEND |
| AMMUNITION, | ) | AND DENYING MOTION TO STRIKE |
| | ) | [23] |
| Defendants. | ) | |
| | ) | |
| MICHAEL ANTHONY VIRGILIO, | ) | |
| ELIZABETH ANN VIRGILIO; RABENSAR, | ) | |
| ING.; BROWNING ARMS COMPANY, | ) | |
| | ) | |
| Claimants. | ) | |

## I.   INTRODUCTION

On May 21, 2007, the United States filed a verified Complaint seeking forfeiture of 3,481 firearms and 1,118,505 rounds of ammunition pursuant to 18 U.S.C. § 924(d).  The Government argues that forfeiture is justified by the following three violations on the part of Claimants: (1) the sale of firearms and ammunition to felons in violation of § 922(d)(1); (2) the sale of firearms to out-of-state residents in violation of § 923(b)(3); and (3) a conspiracy to falsify

firearm records in violation of § 371.  Based on the pattern of
activities shown in the Complaint, the Government argues that the
evidence allows that inference that all remaining firearms and rounds
of ammunition are intended to be used in violation of one of the
aforementioned laws.

Claimants have moved for judgment on the pleadings under Federal
Rule of Civil Procedure 12(c) and to strike portions of the Complaint
pursuant to Rule 12(f).  Claimants argue that the Complaint is
deficient because it fails to state sufficiently detailed facts with
the required particularity to fulfill the applicable pleading
requirements and fails to state a proper claim for forfeiture.

## II.  FACTUAL BACKGROUND[1]

Rabensar, Inc. ("Rabensar") was a federally licensed firearms
dealer operating under the name "Boulevard Sales & Service" at two
separate locations in Compton and Oakview, California.  (Compl. ¶ 5.)
Claimant Elizabeth Ann Virgilio was the president and co-owner of
Rabensar.  (Id. ¶ 9.)  Claimant Michael Anthony Virgilio, now deceased,
was the vice-president and co-owner of Rabensar.  (Id. ¶ 10.)  Stephen
Virgilio and Carlos Castellanos were Rabensar employees.  (Id. ¶¶ 12-
13.)

According to the Complaint, Rabensar engaged in numerous illegal
sales of firearms and ammunition to persons that Rabensar officers or
employees knew to be convicted felons or out-of-state residents.  (Id.
¶ 26.)  The Government points to four specific individuals to whom

---

[1] This factual summary is intended to provide context for the parties'
dispute and is not meant to constitute factual findings or a ruling
on the parties' evidentiary disputes.

Rabensar sold firearms in violation of the Gun Control Act, 18 U.S.C. § 921 *et seq.*  The first individual, identified as "Felon 1," spoke with Castellanos in 2003 and told Castellanos that he was just out of prison and wanted to purchase a firearm.  (Id. ¶ 16.)  Although the Complaint alleges that Felon 1 purchased several firearms from Rabensar using a non-felon acquaintance to complete the paperwork, the Complaint does not identify the firearms involved in any of those transactions.  (Id.)  The Complaint alleges that these "straw purchases" were made "with the knowledge and consent of Elizabeth Ann and Michael Virgilio."  (Id. ¶ 18.)

The second set of transactions involved an individual identified as "CI-1," who made "numerous straw purchases" of firearms and ammunition at Rabensar's Compton location with the assistance of undercover agents from the California Department of Justice and the Los Angeles Police Department. (Id. ¶¶ 19(a), 20(a).)  Stephen Virgilio assisted in these transactions, allegedly knowing that the transactions were straw purchases because CI-1 stated that he was currently unable to purchase a firearm.  (Id. ¶ 19(d).)  On January 13, 2007, as part of the conversation surrounding the first firearm sale, CI-1 asked Stephen Virgilio "what the statute of limitations was for a drug felony," to which Stephen Virgilio responded that he did not know.  (Id. ¶ 19(f).) The first sale involved a Glock .45 caliber handgun, and it was completed with the assistance of California Department of Justice Special Agent Thomas ("SA Thomas") posing as CI-1's non-felon friend to fill out the paperwork.  (Id. ¶ 19(a).)  On January 24, 2007, the second sale occurred, involving a Hi-Point .380 caliber handgun, and

1  the paperwork was completed by LAPD Officer Ruiz, who posed as CI-1's

2  girlfriend.  (Id. ¶ 20(d).)  On that same date, while being helped by

3  Stephen Virgilio, CI-1 paid for the Hi-Point .380 caliber handgun, an

4  additional magazine and ammunition.  (Id.)  The third sale also

5  occurred on January 24, 2007, and it involved a Mossberg 12-gauge

6  shotgun.  (Id. ¶ 20(g).)  Although Officer Ruiz filled out the

7  paperwork, Stephen Virgilio was present when CI-1 made statements

8  explaining that he wanted the shotgun for "business."  (Id. ¶ 20(h).)

9      A third convicted felon, CI-2, purchased a firearm from Rabensar's

10 Oakview store using an ATF undercover agent as a straw purchaser.[2]  (Id.

11 ¶ 22.)  CI-2 was also able to buy ammunition from the Oakview store.

12 (Id.)

13      On January 17, 2007, an ATF agent posed as a New York resident and

14 purchased a Glock .40 caliber handgun and three magazines from Stephen

15 Virgilio through a straw purchase with another ATF undercover agent, a

16 resident of California.  (Id. ¶ 24(a).)  On January 30, 2007, the

17 undercover agents returned to pick up the Glock .40 caliber handgun,

18 and Stephen Virgilio allowed the "New York resident" to purchase

19 ammunition.  (Id. ¶ 25(f).)  On that same date, Stephen Virgilio took a

20 deposit on a Hi-Point handgun in another straw purchase with the

21 undercover agents.  (Id.)

22      In addition to the sales described above, the Complaint

23 alleges that Rabensar engaged in numerous other transaction using

24 the same techniques, and that the specific instances were examples

25

26      [2] The Complaint only alleges that the employees knew that CI-2 was a
   convicted felon; however, the Complaint does not allege that any
27 employee knew the nature of the felony for which CI-2 had been
   convicted.  The Complaint also fails to identify which firearm was
28 purchased.

4

of a pattern of illegal sales.  (Id. ¶¶ 26-27.)  Specifically, the Complaint states,

> During the course of the investigation, ATF repeatedly sent CIs and undercover SAs and police officers into the business locations of Rabensar to determine if Rabensar would sell firearms and ammunition to felons or other prohibited purchasers, including those who were not California residents.  In every instance, at both locations, Rabensar made the prohibited sales.  Not a single prohibited purchaser was turned away by Rabensar at either location.

(Id. ¶ 26.)  These additional alleged violations are not individually identified by the Government with any particularity.

The Complaint also alleges that a number of firearms sold by Rabensar were involved in crimes.  (Id. ¶ 28.)  Specifically, the Complaint alleges that more "crime guns" were "traced" to Rabensar's Compton store than to any other active Federal Firearms License in California.  (Id.)  897 firearms involved in crime investigations were purportedly traced back to the Compton store between January 8, 2002, and January 18, 2007.  (Id. ¶ 29.)

The Complaint further alleges that Rabensar violated the record-keeping requirements of the Gun Control Act by, among other things, failing to properly account for the disposition of more than 2,000 firearms, creating multiple entries for a single firearm, improperly modifying buyers' identities, and creating false forms for straw purchases.  (Id. ¶¶ 40-41.)

The Complaint contains three claims for relief.  Count I alleges that the defendant firearms and ammunition were intended to be used by Rabensar in violation of offenses contained in 18 U.S.C. § 922(d) and are therefore subject to forfeiture under 18 U.S.C. § 924(d) (sales to

felons).[3]  (<u>Id.</u> ¶ 55.)  Count II alleges that the firearms and ammunition were "intended to be used in a pattern of activities which included one or more violations of 18 U.S.C. § 922(b)(3) and are therefore subject to forfeiture pursuant to 18 U.S.C. § 924(d)" (sales to non-residents).  (<u>Id.</u> ¶ 57.)  Count III alleges that the firearms and ammunition are subject to forfeiture under § 924(d) because they were "involved in and/or used in willful violation of 18 U.S.C. § 371" (conspiracy and improper record keeping).  (<u>Id.</u> ¶ 59.)

**III. DISCUSSION**

    **A.   Motion to Strike**

        **1.   Legal Standard**

    Rule 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter" either on its own or upon a party's motion.  Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880, 885 (9th Cir.1983).  Immaterial matter is that which has no important relationship to the claim, and impertinent matter that which does not pertain and is unnecessary to the issues in question.  <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1994) (quoting 5 Charles A. Wright & Arthur R. Miller, <u>Federal Practice</u>

---

[3] Although the Government argues that Claimants would have sold firearms and ammunition in violation of multiple subsections under § 922(d), it concedes that the examples cited relate only to transfers in violation of § 921(d)(1).  (Opp. at 16 n.9.)

6

& Procedure § 1382, at 706-07 (1990)), <u>rev'd on other grounds</u>, 510 U.S. 517, 534-35 (1994).

### 2. Analysis

In the motion, Claimants fail to identify any material in the Complaint as "redundant, immaterial, impertinent, or scandalous." Only in Claimants' Reply Brief do Claimants reference paragraphs 28 and 29 of the Complaint as qualifying "for such characterizations." However, "[t]he district court need not consider arguments raised for the first time in a reply brief." <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007). The Court, therefore, declines to consider this argument.

Claimants do make other arguments to strike intermingled with their arguments for judgment on the pleadings. (<u>See</u> Mot. at 4-5.) To the degree that these arguments are made in conjunction with the arguments for judgement on the pleadings, the Court will address them together below.

### B. Judgment on the Pleadings

### 1. Legal Standard

Rule 12(c) states, "After the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." <u>Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1990). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter

of law." Id.; <u>Rose v. Chase Bank USA, N.A.</u>, 513 F.3d 1032, 1036 (9th Cir. 2008).

Pleading requirements in a civil forfeiture action are governed by the Supplemental Admiralty and Maritime Claims Rules.  Admiralty and Maritime Claims Supp. R. A(1)(B).  Supplemental Rule G "governs a forfeiture action in rem arising from a federal statute. To the extent that this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply."  Admiralty and Maritime Claims Supp. R. G(1).  "Supplemental Rule G(2)(f) codifies the same pleading requirement that has been divined from Rule E(2)(a), except with different language."  <u>United States v. $186,416.00 in U.S. Currency</u>, 527 F. Supp. 2d 1103, 1119 (C.D. Cal 2007), <u>rev'd on other grounds</u>, 590 F.3d 942 (9th Cir. 2007).  The Advisory Committee Note gives the following explanation:

> Rule E(2)(a) requires that the complaint in an admiralty action "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Application of this standard to civil forfeiture actions has evolved to the standard stated in subdivision (2)(f). The complaint must state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. <u>See</u> <u>United States v. Mondragon</u>, 313 F.3d 862 (4th Cir.2002). Subdivision (2)(f) carries this forfeiture case law forward without change.

The pleading rules contained in the Federal Rules of Civil Procedure, as recently interpreted in <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937 (2009) and <u>Bell Atlantic Corp. V. Twombly</u>, 550 U.S. 544 (2007), apply to civil forfeiture actions so long as they are not "inconsistent with" the Supplemental Rules.  Admiralty and Maritime Claims Supp. R. A(2).  "The Government is not required to

allege in the complaint all of the facts and evidence at its disposal." <u>United States v. $22,173 in U.S. Currency</u>, __ F. Supp. 2d __, 2010 WL 1257601, at *1 (S.D.N.Y. Mar. 31, 2010).  Instead, the Government must plead "enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation."  <u>Id.</u>  Thus, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."  18 U.S.C. § 983(a)(3)(D).

As stated in the Advisor Committee Note above, the pleading standard of Supplemental Rule G is tied to the ultimate burden of proof in the case.  In 2000, Congress passed the Civil Asset Forfeiture Reform Act ("CAFRA"), which requires the Government to establish the forfeiture of property by a preponderance of the evidence.  18 U.S.C. § 983(c)(1).  However, the Firearm Owners Protection Act ("FOPA"), which was passed on May 19, 1986, heightened the Government's burden of proof in certain firearm forfeiture cases and created an additional specificity requirement beyond the pleading requirement now codified in Supplemental Rule G.  <u>See</u> 18 U.S.C. § 924(d)(2)(C).  Section 924(d)(2)(C) provides,

> Only those firearms or quantities of ammunition particularly named and *individually identified* as involved in or used in any violation of the provisions of this chapter or any rule or regulation issued thereunder, or any other criminal law of the United States or as intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by *clear and convincing evidence*, shall be subject to seizure, forfeiture, and disposition.

§ 924(d)(2)(C) (emphasis added).  The Complaint in this case attaches an exhibit with identifying information for each of the 3,481 firearms

and 1,118,505 rounds of ammunition that were seized.  The Government contends that every firearm and every round of ammunition was involved in, used in, or intended to be used in the offenses alleged in the Complaint.

### 2.  Analysis

The Court will address the parties' arguments below with respect to each of the three Counts alleged by the Government.

### a.   Count I-Intended Violations of 18 U.S.C. § 922(d)

Count I alleges that defendant firearms and ammunition were intended to be used by Rabensar "in one or more offenses described in 18 U.S.C. § 922(d) and are therefore subject to forfeiture pursuant to 18 U.S.C. § 924(d)."  Section 924(d)(1) states that "any firearm or ammunition intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure and forfeiture . . . ."  § 924(d)(1).  Paragraph (3) of the subsection permits forfeiture for, in relevant part, "(D) any offense described in section 922(d) of this title where the firearm or ammunition is intended to be used in such offense by the transferor of such firearm or ammunition . . . ."  Section 922(d), in turn, states,

> It shall be unlawful for any person to sell or otherwise dispose of a firearm or ammunition to any person knowing or having reasonable cause to believe that such person- (1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . .

§ 922(d).

Claimants argue that Count I does not give adequate notice of which subparagraph of section 924(d) is being relied on and "fails to inform which of the more than nine prohibited categories of § 922(d) is

10

being alleged." Although this is true of the "claim for relief" at the end of the Complaint, the body of the Complaint alleges specifically that the firearms fall within sections 922(d)(1) and 924(3)(D). Therefore, this argument is without merit.

In short, whether judgment on the pleadings is appropriate for Count I depends upon whether the Government has alleged sufficiently detailed facts to support a reasonable belief that it will be able to show at trial by *clear and convincing evidence* that each of the firearms and ammunition rounds to be forfeited were *intended* to be used in illegal transactions. In explaining the reasons for the FOPA, Senate Report 98-583 (1984) stated that committee hearings revealed "considerable evidence of misuse of existing, overly broad powers to confiscate and forfeit firearms." The purpose of the FOPA was to remedy this problem:

> Finally, under proposed 18 U.S.C.A. § 924(d)(2)(C), only those firearms particularly and individually identified as used, involved in or, in certain cases, intended to be used in a violation of Chapter 44, regulations issued thereunder, or any other Federal criminal law, may be seized or forfeited. This is intended both to prevent the issuance of general warrants, leaving it to the executing agents to decide which firearms meet the general criteria of use or involvement, and also to *prevent wholesale forfeiture of collections or inventories upon a claim of general intent to use them illegally*. These are protections designed to safeguard Fourth Amendment rights.

Senate Report 98-583 (1984) (emphasis added).

While the Government has only referenced a few instances in which sales were made in violation of 18 U.S.C. § 922(d)(1), the Complaint asserts that there have been "numerous sales of firearms and ammunition to persons whom [Claimants] knew or had reason to believe were convicted felons, in violation of 18 U.S.C. § 922(d)(1)." In response, Claimants make two arguments: (1) the Complaint's references to

11

"convicted felons" are insufficient to allege a violation of § 922(d) and (2) the Complaint fails to allege with any specificity that every firearm and every round of ammunition sought to be forfeited was intended to be sold in violation of § 922(d).

Claimants' first argument fails.  While it is true that § 922(d)(1) does not use the term "felon," it prohibits a person from selling firearms or ammunition to any consumer knowing or having reasonable cause to believe that the consumer "is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." § 922(d)(1).  Section 921(a)(20) exempts several categories of felonies from the exclusion contained in § 922(d)(1).[4]  However, the facts alleged in the Complaint may give rise to the inference that Stephen Virgilio, at a minimum, had reasonable cause to believe that CI-1 was a felon as defined by § 922(d)(1).  CI-1 told Stephen Virgilio that he was currently unable to purchase a firearm and asked what the statute of limitations was for a drug felony.  Therefore, the Complaint sufficiently alleges a violation of § 922(d)(1) with respect to the specific firearms and ammunition discussed in the Complaint.

Claimants' second argument is meritorious.  Although the Complaint alleges "numerous" violations of § 922(d), the Government identifies only a few instances in which sales were made in violation of § 922(d)(1).  Nevertheless, the Government makes the sweeping claim that

_____

[4] Specifically, §921(a)(20) states that the term "crime punishable by imprisonment for a term exceeding one year" does not include—
    (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
    (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

the entire inventory of 3,841 firearms and 1,118,505 rounds of ammunition were intended to be used in violation of § 922(d).  The Government argues that Rabensar's sales are "emblematic of a large-scale pattern of illegal firearm sales."[5]

Prior to the passage of the FOPA, there was a split in authority as to whether illicit "intent" could be imputed to other firearms in a dealer's inventory.  See United States v. Eighty-Six Firearms and Twenty-Two Rounds of Ammunition, 623 F.2d 643 (10th Cir. 1980) (per curiam); United States v. One Assortment of Seven Firearms, 632 F.2d 1276, 1279 (5th Cir. 1980).  Eighty Six Firearms took a more aggressive approach in imputing intent to other firearms.  Not surprisingly, Eighty Six Firearms is one of the principal authorities upon which the Government relies.

In Eighty Six Firearms, the court found forfeiture appropriate for firearms that were not directly involved in the offense.  623 F.2d at 645.  The case involved a licensed firearm dealer who had illegally sold handguns to undercover agents on two separate occasions.  Id. at 644-45.  The district court ordered forfeiture of the handguns on the theory that they were intended to be used in violation of the law, but the district court did not find that the long guns possessed by the dealer were intended to be sold illegally.  Id.  The Tenth Circuit

---

[5] In addition to the generalized allegation that Rabensar has engaged in "numerous" illegal sales, the Government references the high number of "crime guns" that were "traced" to Rabensar's Compton store between 2002 and 2007.  However, the Government provides no context for these statistics, gives no explanation as to the meaning of a "crime gun" being "traced," and yet invites the Court to make the dubious inference that these "traces" would support a conclusion that Rabensar's entire inventory was intended to be sold in violation of § 922(d).  However, the fact that these guns were used in crimes does not necessitate a finding that they were sold in violation of the law.

13

reversed in part, finding that the record provided sufficient facts to support forfeiture of the long guns as well. Id. An agent testified that on one occasion the dealer had pointed at some long guns even though he recommended a handgun. Id. at 645. The Tenth Circuit reasoned,

> The long guns were on display for the agents' inspection. While recommending a smaller, purse-size weapon respondent directed the attention of the agents to the long guns. There is little reason to doubt that the long guns would willingly have been sold to the agents if they had asked. There were price tags on them. Under these circumstances the finding of intent applies to the long guns as well as the handguns. The lower court erroneously limited its finding of intent to handguns.

Id.

In contrast, the court in Seven Firearms applied a more individualized analysis to firearm forfeiture. The court concluded that only certain firearms could be forfeited when a dealer was on the verge of selling them to a non-resident. 632 F.2d at 1279. Agents had seized the guns when the undercover buyer was at the store ready to pick them up and had also chosen four more guns. Id. at 1278. Nevertheless, the Fifth Circuit held that the intent from those transactions was not imputed to the other firearms in inventory, maintaining,

> But the statutory provision does contain limiting language. The firearms, to be subject to forfeiture, must be reasonably identified to the violation, or in this case, to the sale. By holding that identification is a necessary indicator of intent, we give meaning to the words "intended to be used in . . . any violation," while ensuring that portions of a firearm dealer's inventory that are unrelated to a given violation are not swept away by enforcement officers.

Id. at 1279.

Congress resolved the conflict with the passage of the FOPA, which heightened the burden of proof for "intended use" and implicitly

rejected the Tenth Circuit's holding.  See § 924(d)(2)(C); Senate Report 98-583 (1984) (stating that the purpose of the FOPA was to "prevent wholesale forfeiture of collections or inventories upon a claim of general intent to use them illegally").  Nevertheless, the Government argues that Eighty-Six Firearms applies here because Rabensar employees would have been willing to sell any of the guns in their inventory illegally.  However, in addition to the fact that the FOPA rejected the holding in Eighty-Six Firearms, that case also dealt with far fewer firearms, all of which were on display in the store at the time of the illegal sale.

The Government has cited little authority to support its argument that Rabensar's entire inventory may be subject to forfeit under the alleged facts.  The other case relied upon by the Government is clearly distinguishable.  In United States v. One Assortment of 12 Rifles and 21 Handguns, 313 F. Supp. 641 (N.D. Fla. 1970), the district court held that an entire inventory could be forfeited by an *unlicensed* dealer who had made illegal sales.  The court reasoned that the inventory was displayed for prospective buyers; therefore, the dealer intended to sell the inventory illegally.  Id. at 642.  The result in 12 Rifles is consistent with the statutory structure in § 924(d).  The illegal sales that had taken place could establish a "pattern of activities" prohibited by law.  See § 924(d)(3)(C).  Because the dealer was unlicenced, *every* future sale would be in violation of § 923(a) by definition.  This pattern could form the basis for the belief that the dealer would engage in future firearm sales with regard to all guns forfeited.  The forfeiture of all remaining firearms in the inventory was thus justified.  See also United States v. 1,922 Assorted Firearms, 330 F. Supp. 635, 642 (E.D. Mo. 1971) ("We do not mean to imply by

anything we have said herein that a dealer's entire stock of goods may not be subject to forfeiture if the facts so warrant.  By way of example, a gun store may be used as a front to outfit persons intending to violate the law.").

The same can not be said with respect to Rabensar's inventory.  In fact, the bulk of courts analyzing similar claims have held that one's intention to sell some chattels, such as firearms, in violation of the law "may not be imputed to other chattels as to which no clear intention to so sell and use them is shown."  1,922 Assorted Firearms, 330 F. Supp. at 642 (citing United States v. 2265 One-Gallon Paraffined Tin Cans, 260 F.2d 105, 107 (5th Cir. 1958)); United States v. Fifty-Two Firearms, 362 F. Supp. 2d 1308, 1313-14 (M.D. Fla. 2005), aff'd, 362 F. Supp. 2d 1323 (M.D. Fla. 2005) (stating that a dealer's sale of a firearm to a convicted felon gave "insufficient cause to believe that Holt also intended to sell some or all of the 52 guns to a convicted felon"); United States v. Approximately 627 Firearms, 589 F. Supp. 2d 1129, 1135 (S.D. Iowa 2008) (holding that 20 to 25 that an unlicenced dealer held for personal use "are not subject to forfeiture simply because the vast majority of seized firearms were 'involved in' the underlying offense").

Similar to the deficiencies in the Complaint with respect to the firearms, there is likewise no basis for forfeiture of Rabensar's inventory of ammunition.  The Government has not pled facts to support any argument that Claimants intended to sell every round of ammunition in violation of § 922(d).  Therefore, unless sufficient facts are pled, neither the firearms nor the ammunition may be subject to forfeiture.

//

//

**b.    Count II–Intended Violations of 18 U.S.C. §**

**922(b)(3)**

Count II alleges that "defendant firearms and ammunition were intended to be used in a pattern of activities which included one or more violations of 18 U.S.C. § 922(b)(3) and are therefore subject to forfeiture pursuant to 18 U.S.C. § 924(d)."  Claimants contend that this count fails to state a claim for ammunition because the statute only prohibits the sale of *firearms* to out-of-state residents.  Section 924(d) authorizes forfeiture for "any firearm or ammunition intended to be used in any offense referred to in paragraph (3) of this subsection . . . ."  § 924(d)(1).  Paragraph (3) provides in part,

> (C) any offense described in section 922(a)(1), 922(a)(3), 922(a)(5), or 922(b)(3) of this title, where the firearm or ammunition intended to be used in any such offense is involved in a pattern of activities which includes a violation of any offense described in section 922(a)(1), 922(a)(3), 922(a)(5), or 922(b)(3) of this title

§ 924(d)(3)(C).  This subparagraph has two separate requirements.  First, the firearm or ammunition must be "intended to be used" in one of the four enumerated offenses.  Second, the firearm or ammunition must be "involved in a pattern of activities" that includes a violation of one of the offenses.  Section 922(b)(3), one of the provisions incorporated into subparagraph (3)(C), makes it unlawful for a licensed dealer to sell "any *firearm* to any person who the licensee knows or has reasonable cause to believe does not reside in . . . the State in which the licensee's place of business is located . . . ."  § 922(b)(3) (emphasis added).  This section by its own terms does not apply to ammunition, and the Government is incorrect in arguing that it does.

The Government argues that even though the underlying offense of selling to non-residents only applies to firearms, violation of that

17

provision allows forfeiture of any ammunition involved in a "pattern of activities" that includes violation of § 922(b)(3).  The Government bases this argument on the fact that subparagraph (3)(C) refers to both firearms and ammunition.  This can be better explained, however, by the fact that another statutory section mentioned in the subparagraph relates to ammunition.  Specifically, § 922(a)(1) makes it unlawful for a person to engage in the interstate transportation of ammunition.  § 922(a)(1)(B).  Thus, when referring to ammunition, the reference in subparagraph (3)(C) alludes only to violations of subparagraph (a)(1).  Because no violations of subparagraph (a)(1) are alleged here, the ammunition cannot be subject to forfeiture.

With respect to firearms discussed in Count II, the Complaint suffers from the same deficiencies discussed above with regard to Count I.  In fact, the Complaint references only one "non-resident" to whom firearms were sold.  While the firearms involved in specific illegal transactions may be subject to forfeiture, see § 924(d)(3)(C), there is no basis to support the argument that every one of Claimants' 3,481 firearms were intended to be sold in violation of § 922(b)(3).  Therefore, unless sufficient facts are pled, the firearms cannot be subject to forfeiture.

### c.    Count III—Violation of 18 U.S.C. § 371

Count III alleges that "defendant firearms and ammunition were involved and/or used in a willful violation of 18 U.S.C. § 371, a criminal law of the United States and are therefore subject to forfeiture pursuant to 18 U.S.C. § 924(d)."  Section 371 provides,

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object

of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.  This section does not provide for forfeiture on its own terms; however, it may be the basis for forfeiture under § 924(d)(1).  See § 924(d)(1) (stating that firearms shall be subject to forfeiture for any "willful violation of any other provision of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States").

The alleged conspiracy appears to be based on Claimants' failure to maintain accurate records of firearm sales and their falsification of ATF 4473 forms.  These acts would be violations of § 923, which requires dealers to maintain records regarding the sale and disposition of firearms.  18 U.S.C. § 923(g)(1)(A).  Claimants correctly point out that the record-keeping provision of § 923 applies only to firearms and not to ammunition.  See § 923 (stating that dealers must maintain "records of importation, production, shipment, receipt, sale, or other disposition of *firearms* at his place of business . . .") (emphasis added).  Therefore, Claim III fails with respect to the ammunition.

With respect to firearms, the Government must show that the record-keeping violations were *willful*, and not merely negligent or knowing, violations of the criminal laws of the United States.  § 924(d)(1).  Although not mentioned in the Complaint, these record-keeping violations may also fall into a separate offense that only requires a *knowing* violation.[6]  Section 924(a)(3) provides that any

---

[6] The Government need not allege the correct legal theory in order to survive a motion to dismiss.  See Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss.").

dealer who knowingly makes "any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter" is subject to a fine or imprisonment.  § 924(a)(3)(A).  Criminal action is not the only remedy for this violation, however, because § 924(d) authorizes forfeiture for "any firearm or ammunition involved in or used in" any "knowing violation of section 924."  § 924(d)(1).  The Complaint specifically alleges that "Rabensar employees falsified ATF Forms 4473 and other paperwork."  (Compl. ¶ 48.)  These falsifications would therefore provide grounds for forfeiture-but only with respect to firearms "involved in or used in" the record-keeping violation.

Whether based on § 923(g)(1) or § 924(a)(3), the record-keeping violations can only provide the basis for forfeiture if the firearms were "*involved in or used in*" Rabensar's false statements or representations on the ATF forms.  The part of § 924(d)(1) that allows forfeiture for record-keeping provisions does not include forfeiture for "intended use."  With respect to the record-keeping violations, the Government's burden of proof would be a preponderance of the evidence. § 924(d)(1); <u>United States v. Four Hundred Seventy Seven (477) Firearms</u>, 698 F. Supp. 2d 890, 894 (E.D. Mich. 2010).

In <u>United States v. Ninety-Five Firearms</u>, 28 F.3d 940, 942 (9th Cir. 1994), the Ninth Circuit affirmed a forfeiture order that applied to 95 firearms that were not documented in the dealer's Aquisition and Disposition ("A & D") records.  In the present case, the Complaint alleges that "the defendant firearms and ammunition were involved in an on-going conspiracy in willful violation of 18 U.S.C. § 371."  (Compl. ¶ 53.)  It also alleges that a review of the A & D records shows that "more than 2,000 firearms are unaccounted for-they were not held in

inventory at the store and there is no disposition information in the A & D records." (Id. ¶ 40.)  However, the Complaint does not allege that every firearm seized  was "involved in or used in" the alleged paperwork conspiracy.  See § 924(d)(2)(C).  In fact, the Complaint fails to allege that *any* of the seized guns were subject to record falsification.  Thus, the Complaint fails to plead sufficiently detailed facts as required by Supplemental Rule G.  Therefore, unless sufficient facts are pled, the firearms cannot be subject to forfeiture.

### D.   Leave to Amend the Pleading

The Government has requested leave to amend the pleading if the Court finds that the Complaint "does not plead sufficient facts to state a claim for relief."  (Opp. at 24-25.)  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires."  A court's denial of leave to amend is reviewed for abuse of discretion.  In re Dynamic Random Access Memory (DRAM) Antitrust Litigation, 546 F.3d 981, 990 (9th Cir. 2008).  "A court properly exercises its discretion in denying leave to amend if the proposed amendment would be futile."  Id.; Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009) (stating that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts").

The legal theory under which the Government has been proceeding does not appear to be supported by statute or case law.  Nevertheless, because the Government argues that it can allege additional facts, and because of the standard governing a motion under Rule 12(c), the

Government should be permitted to amend the Complaint.  The Court, therefore, will allow the Government to amend the Complaint as follows:

### 1.    Count I

The Government may allege, if possible, additional facts to support its contention that all of the firearms and ammunition seized were "intended to be used" in violation of 18 U.S.C. § 922(d)(1).

### 2.    Count II

The Government may allege, if possible, additional facts to support its contention that all of the firearms seized were "intended to be used" in violation of 18 U.S.C. § 922(b)(3).  However, there is no legal theory under which ammunition may be forfeited for a violation of § 922(b)(3).  Therefore, the forfeiture may not be addressed under Count II.

### 3.    Count III

Like Count II, there is no legal theory under which the Government can seek forfeiture against ammunition for violations of firearm record keeping.  Thus, the Government may amend this section, if possible, to address the deficiencies stated above.

//
//
//
//
//
//
//
//
//
//

**IV.   CONCLUSION**

   For the reasons stated herein, Claimants' Motion to Strike is DENIED. Claimants' Motion for Judgment on the Pleadings is GRANTED WITH LEAVE TO AMEND in accordance with the restrictions set forth. If the Government wishes to file such an amendment, it must do so within the next thirty (30) days.


         IT IS SO ORDERED.


DATED:_____December 8, 2010_____        _____

                                                    STEPHEN V. WILSON

                                             UNITED STATES DISTRICT JUDGE

23